THE PEOPLE OF THE STATE OF NEW YORK, Respondents, *v.* HENRY B. DENNISON et al., Appellants

Where the *gravamen* of an action is fraud, plaintiffs having failed to establish the fraud cannot maintain the action on the theory that a liability founded on contract was disclosed by the evidence.

In an action founded on fraud, a counter-claim founded on contract cannot be allowed.

Plaintiff s complaint alleged in substance that under color of a contract defendant fraudulently obtained money from the State by means of false representations, false vouchers and collusion with State officers. Defendants set up as a counter-claim a balance due them from the State for work done under the contract. To the answer a reply was served. *Held*, that the cause of action set up as a counter-claim was not one arising out of the transaction upon which plaintiff's claim was founded, within the meaning of the Code of Procedure (§ 150); and that a counter-claim founded on contract was not proper in such an action.

A State by coming into court as a suitor does not subject itself to an affirmative judgment upon a set-off or counter-claim.

Authority to render a judgment against the State in one of its own courts cannot be implied but must be express. It cannot be claimed under general laws in which the State is not mentioned.

Accordingly *held*, that the provision of the Revised Statutes (2 R. S. 552, § 13) providing that civil actions or proceedings instituted in the name of the State "shall be subject to all provisions of law respecting similar suits and proceedings" instituted by individuals, save where otherwise provided, and that the State shall be liable to be nonsuited, etc., did not authorize an affirmative judgment against it on a counter-claim.

Judgment was rendered upon the report of referees in favor of plaintiff. This was reversed by the General Term. The attorney-general on appeal to this court gave the required stipulation for judgment absolute. *Held*, that this was not an assent to an affirmative judgment on the counter-claim; that it waived no legal objection to the counter-claim, or immunity of the State from such a judgment.

It was claimed on the part of defendants that the counter-claim, having been put in issue, would be barred if no judgment was rendered thereon. *Held*, untenable; that defendants' demand for a balance due, not being the proper subject of a counter-claim in this action, was not properly in issue and the judgment rendered would not conclude defendants in respect thereto.

*It seems* that the right of a debtor of the United States government, when sued by it, to interpose a counter-claim or counter-credits, rests in all cases upon the provisions of the act of Congress granting and regulating it (Act of March 3, 1797, §§ 3 and 4); and while, under said act, a defendant upon complying with its conditions may give in evidence any counter-claim he may have in his own right, which is a proper subject of set-off, such counter-claim is available only to the extent necessary to defeat the claim of the government, and no affirmative judgment for any excess can be rendered against it.

(Argued February 2, 1881 ; decided March 1, 1881.)

Appeal from an order of the General Term of the Supreme Court, in the third judicial department, made September 17, 1880, affirming an order of the Special Term vacating a judgment entered herein, for the amount of a counter-claim set forth in the answer, upon a remittitur from this court which directed judgment absolute against plaintiffs.

The State, on the 9th day of September, 1879, entered into a contract with defendant Denison to do certain work upon the Erie canal, and to furnish the materials therefor, in which

the other defendants were the partners of Denison. The complaint herein averred, in substance, that under that contract the defendant should have received only $74,183.40; that no legal or valid change or alteration of that contract was ever made; that at various times between the 23d day of November, 1869, and 1st day of June, 1875, by false pretenses and false certificates from resident and assistant engineers, the defendants obtained several hundred thousand dollars from the State in excess of what they were legally entitled to receive under their contract; that the "false certificates and vouchers presented by the defendants, which were procured by them from the assistant engineers and resident engineers, officers of the State, * * * were procured and obtained by the exercise of corrupt influences upon the said officers, and among other influences, by inducing the said officers to believe that, through the great political power and influence of the defendants and their friends, the said engineers would be dismissed if they refused to sign such certificates and vouchers," and it concluded with a demand for judgment against the defendants "for the sum of $417,571, with interest thereon from the 1st day of January, 1870, besides costs of the action."

The answers deny all fraud, corruption and collusion of every kind. They admit the making of the original contract set out in the complaint, but aver the legal performance of work and furnishing of materials for and to the State to the amount of $494,584.05, in actual value, which have been duly accepted by it. The payments on account thereof are detailed, and all are averred to be under legislative appropriations made for that purpose. Such payments, however, the answers claim, do not liquidate the demands of defendants in full; but on the contrary $73,674.05 is charged to be justly due and owing by the State to the defendants on account of the work done and materials furnished by them, for which sum, "with interest thereon from the 1st day of June, 1875, with costs of this action," judgment is demanded.

To the answer of the defendants there was a reply by the plaintiffs, putting in issue the right of the defendants to re-

cover the moneys set up by way of counter-claim, and also the facts upon which such right of set-off was averred to exist.

The report of the referees, to whom the action was referred to hear and decide, did not find any fraud, nor that the State had paid for work or materials in excess of their actual value, but that alterations in the original contract, requiring more work and materials, were contrary to law, that the payments made on account of such increased work and materials, amounting to $332,926, could be recovered by the State, and that the plaintiffs were entitled to a judgment for that sum against the defendants, with interest.

The judgment entered upon this report was reversed by the General Term and a new trial was ordered.

The attorney-general appealed to this court, giving the stipulation for judgment absolute, etc., in case of affirmance, required by the Code of Civil Procedure (§ 191).

The order of the General Term was affirmed by this court (see Mem. 80 N. Y. 656), and upon the remittitur judgment, was entered against plaintiff for the amount of the counter-claim, besides costs.

*William C. Ruger* for appellants.  The position of a sovereign and suitor are irreconcilably opposed, and by adopting one character the other must be abandoned. (*People* v. *Stephens*, 71 N. Y. 549, 550; *United States* v. *Mann*, 2 Brock. Marshall, 12.) It would be a violation of natural justice for the State to claim exemption from the obligations of a code to whose arbitrament it appeals and which it seeks to enforce against its adversary. (*People* v. *Brandreth*, 36 N. Y. 197; *State of Illinois* v. *Butterford*, 8 Paige, 554; *United States* v. *Arredondo*, 6 Pet. 711; *United States* v. *Bank of Metropolis*, 15 id. 377.)  An individual sued by the government may set up as a defense in such action, by way of off-set or counter-claim, such "credits," either legal or equitable, as might exist in his favor against the government. (1 U. S. Statutes at Large, 515; Act of Congress, § 3, of March 3, 1797; *United States* v. *Robeson*, 9 Pet. 319; *United States* v. *Wilkins*, 6 Wheat. 135;

*United States* v. *Gratiot*, 15 Pet. 336; *United States* v. *Ringgold*, 8 id. 150; *United States* v. *Preston*, 1 McLean, 65; *United States* v. *Ware*, 4 Wall. 617; *United States* v. *Bank of Metropolis*, 15 Pet. 377; *United States* v. *Eckford*, 6 Wall. 484; *United States* v. *DeGroot*, 5 id. 431.) The want of jurisdiction over the person is waived and the power of the court to render judgment upon a counter-claim against the State is fully confirmed. (§ 13, tit. 17, chap. 8, part, 3, vol. 3, of the sixth edition of the Revised Statutes.) If this had been a case instituted by a citizen against the defendant no question could arise, but that the counter-claim therein was properly pleaded and legally allowable. (Old Code, §§ 149, 150; *The Glen & Hall Manf'g. Co.* v. *Hall*, 61 N. Y. 226.) In such a case the defendants would have been entitled to an affirmative judgment for the amount of their counter-claim. (Old Code, § 274; new Code, §§ 504, 1323; *Ogden* v. *Coddington*, 2 E. D. Smith, 317; *People* v. *Brandreth*, 36 N. Y. 197.) That that is the true meaning of the statute is implied by other legislation. (Laws of 1878, § 1, chap. 270; Laws of 1880, § 1, chap. 272.) The phraseology employed in the Code of Civil Procedure clearly authorizes a judgment against the State. (§§ 1984, 1985.) Chapter 444, Laws of 1876, creating a board of audit, does not purport to repeal any existing provision of law; a repeal by implication is not favored. (*Taylor* v. *City of New York*, MSS., Ct. of App.) If the defendant had a valid legal defense to this action when the act was passed, the passage of the act would not deprive him of it, except by express language showing an intent to do so. (*Dash* v. *Van Kleeck*, 7 Johns. 477; *Fitzpatrick* v. *Boylan*, 57 N. Y. 433; *Tint* v. *De Cabezos*, 18 Abb. Pr. 143; *Palmer* v. *Conly*, 4 Denio 376; *Hitchcock* v. *Way*, 6 Ad. & Ell. 943; *Jordan* v. *National S. & L. Bank*, 74 N. Y. 475.) Jurisdiction was conferred upon the court by the stipulation of the attorney-general on appealing from the order of the General Term, whereby he stipulated that upon an affirmance of the order appealed from, judgment absolute should be rendered against the plaintiffs, in favor of the defendants. (Laws of 1875, chap. 49, § 4; 1

Statement of case.

Kent's Com. 464; *Stief* v. *Hart*, 1 N. Y. 20; *Livingston* v. *Harris*, 11 Wend. 329; *People* v. *Stephens*, 52 N. Y. 310; *Lanman* v. *Lewiston R. R. Co.*, 18 id. 493; *Lake* v. *Nathans*, 67 id. 589; *Hitchings* v. *Van Brunt*, 38 id. 335; *Northern Ins. Co.* v. *Wright*, 76 id. 446; *Cobb* v. *Hetfield*, 46 id. 533; *Godfrey* v. *Moser*, 66 id. 250; *Rust* v. *Hauselt*, 22 Alb L. J., No. 14, Oct. 2, 1880; *Harris* v. *Hiscock*, MSS., Ct. of App., March, 1880; *Le Geun* v. *Gouveneur*, 1 Johns. Cas. 436; *Embury* v. *Connor*, 3 N. Y. 511.) The resident and division engineers are made the agents of the State to measure and certify to canal work. (Chapman's Manual, §§ 141, 142, 308, 309, 310, chaps. 262, 278, Laws of 1848.) The auditor is expressly authorized to audit all claims arising under the act chapter 877, Laws of 1869, § 1. A general act of the legislature authorizing payments to be made on a void contract legalizes the entire contract. (*Benedict* v. *Smith*, 10 Paige, 127; *Corning* v. *Southland*, 3 Hill, 552; *Moss* v. *R. I. R'y Co.*, 5 id. 157.) The allowance of interest on this claim is expressly authorized by statute. (Laws of 1874, chap. 266, § 1; Chapman's Manual, § 156.)

*Roscoe Conkling* for respondent. Judgment for counter-claim against the State cannot be maintained. (Old Code, § 150; 2 Duer, 442; 3 R. S. 553; 19 Wall. 239; Broom's Legal Maxims, 85 [3d ed.]; *U. S.* v. *Giles*, 9 Cranch, 212, 227, 228; *U. S.* v. *Wilkins*, 6 Wheat. 135, 144; *U. S.* v. *Mann*, 2 Brock. 9; *U. S.* v. *Arredondo*, 6 Pet. 711, 712; *People* v. *Brandreth*, 36 N. Y. 197; *U. S.* v. *Bank of Metropolis*, 15 Pet. 377; *Reeside, Ex'trix*, v. *The Secretary of the Treasury*, 11 How. [U. S.] 272, 292; *Briscoe* v. *Kentucky Bank*, 11 Pet. 321; 4 How. 288; 9 id. 389; *De Groot* v. *The U. S.*, 5 Wall. 419, 431; *U. S.* v. *Eckford*, 6 id. 484; *Schaumburg* v. *The U. S.*, 24 Int. Rev. Rec. 76; 5 Redf. 551; Act of March 3, 1797 [1 Stats. at Large, 515]; *U. S.* v. *Mann*, 2 Brock. 12, 13; *Battle* v. *Thompson*, 65 N. C. 406; *Linslie* v. *King*, 1 Ired. 401; *Anneworth* v. *Fentress*, 1 Den. 419; *State* v. *Franklin Bank, of Columbus*, 10 Ohio, 91; *Gail Borden* v. *Hous-*

*ton,* 2 Webb & Duvall [Tex.], 594; *Bates, Clerk, etc.,* v. *The Republic of Texas,* 6 Wheat. 616; *Chevalier's Admrs.* v. *The State,* 10 Tex. 315; 2 id. 192; *Comm'rs* v. *Rhodes,* 5 T. B. Monroe, 318; *Dervere* v. *Harvie,* 7 id. 441; 14 Pet. 315; 7 Ired. [N. C.] 59; *Comm'rs* v. *Cook* [1871], 8 Bush, 224; *Nall* v. *Springfield,* 9 id. 674; *Comm'rs* v. *Todd,* id. 717; 2 Statute Law of Kentucky, 1448; Kentucky Code of Practice, 33; *State* v. *Balt. & Ohio R. R. Co.,* 34 Ind. 344, 374; 45 id. 609; *State* v. *Northern Cent. R'y Co.,* 18 id. 193; 9 Gill, 89; *Comm'rs* v. *Matlack,* 4 Dallas, 303; 1 Brightly's [Purdon's] Dig. 457, tit. "Defalcation;" *White* v. *The Governor,* 18 Ala. 767, 769; Clay's Dig. of Laws, 338; *City of New Orleans* v. *Finnerty,* 27 La. Ann. 681; *State* v. *Floyd,* 28 id. 553; *State* v. *Lackie,* 14 id.; *City of New Orleans* v. *Davidson,* 30 id. 541 Louisiana Code of Practice, art. 371; *Treasurer* v. *Cleary,* 3 Rich. [S. C.] 372; *Raymond* v. *The State,* 54 Miss. 562; 21 Alb. L. J. 381, 382; Rev. Code, Miss. [Poindexter, 1824] 119; *Auditor* v. *Davies,* 2 Ark. 494; *Biscoe* v. *State,* 19 id. 539; R. S., Ark. 1837, p. 726; Rev. Code of Miss. 321 [ed. 1871]; *Printup* v. *Cherokee R. R. Co.,* 45 Ga. 315.) The State not being named in any of our statutes of counter-claim, there was no authority to enter a judgment against it for the counter-claim. (3 R. S. 553; old Code, §§ 168, 319; 36 N. Y. 191.) The stipulation, as given by the plaintiff on its appeals to the Court of Appeals, did not entitle the respondents, if they succeeded on the appeal, to all the relief they demanded in their answer. (*People* v. *Brandreth,* 36 N. Y. 191; *Lanman* v. *The Lewiston R. R. Co.,* 18 id. 493; *Hitchings* v. *Van Brunt,* 38 id. 335; *Cobb* v. *Hatfield,* 46 id. 533; *Godfrey* v. *Moser,* 66 id. 250; *Lake* v. *Nathans,* 67 id. 589; Voorhees' Code, 224, note; *Ives* v. *Goddard,* 1 Hilton, 435.) A reply to an answer does not admit that a counter-claim is set up in the answer. (67 N. Y. 48.) In order to constitute a counter-claim against the State the allegations in the answer must show that all the conditions precedent, necessary to exist before a claim was perfected against the State, had accrued. (R. S. [6th ed.], chap. 9, §

49, tit. 9, part 1, p. 651; 1 id. [6th ed.] 655, § 70; *People* v. *Benton*, 7 Barb. 208; *Town of Guilford* v. *Cooley*, 58 N. Y. 116.) The Court of Appeals having held this to be an action in tort, the counter-claim fails, as no counter-claim can be sustained in an action of tort. (*Smith* v. *Hall*, 67 N. Y. 48; *Pattison* v. *Richards*, 22 Barb. 143; *Ashens* v. *Hearns*, 3 Abb. 187; *Schnaderlock* v. *Worth*, 8 id. 37; *Jellerman* v. *Dolan*, 7 id. 395, note; *Gotler* v. *Babcock*, id. 392, note; *Donohue* v. *Henry*, 4 E. D. Smith, 162; *Drake* v. *Cockcroft*, id. 34; *Page* v. *Edgerton*, 18 How. 359; *De Leyer* v. *Michaels*, 5 Abb. 203; *McKenzie* v. *Farrell*, 4 Bosw. 193; *Bissell* v. *Pearce*, 21 How. 130; *Kurtz* v. *McGence*, 5 Duer, 660; *Mayor of N. Y.* v. *Parker Vein Steamship Co.*, 12 Abb. 300; *Murden* v. *Priment*, 1 Hilt. 75; *Chambers* v. *Lewis*, 2 id. 591.)

Rapallo, J. The General Term held, upon the appeal from the judgment, that this action was founded upon the allegation of fraud, and reversed the judgment and granted a new trial on the ground, among others, that the plaintiff, having failed to establish the fraud alleged, could not maintain the action on the theory that a liability founded on contract was disclosed by the evidence.

That decision was affirmed by this court,* and it was distinctly held by us that this was an action for a tort, and not upon contract.

It was consequently an action in which a counter-claim founded on contract could not properly have been allowed. (*Smith* v. *Hall*, 67 N. Y. 48; Code, § 150; *Pattison* v. *Richards*, 22 Barb. 143.) The claim of the defendants was a cause of action, not arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action. The subject of the action was a fraud alleged to have been committed by the defendants upon the plaintiff, the allegation being that the defendants fraudulently obtained money from the State by means of false repre-

---

* 80 N. Y. 656.

sentations, false vouchers and collusion with State officers. The counter-claim was that the State was indebted to the defendants on contract for work and materials which had not been paid for. The circumstance that the work in respect to which the fraudulent representations charged were alleged to have been made, was the same for which the defendants claimed that an indebtedness existed in their favor, does not bring the case within section 150 of the Code. The subject of this action, which was the fraud, was wholly distinct from the claim set up by the defendants for money due on the contract for the work. Nor has section 150 been regarded as conferring the right to set up a counter-claim founded on contract, in an action of tort.

The judgment having been reversed on the ground of the failure of the plaintiff's case, the counter-claim has not been adjudicated upon in any form, nor was its validity passed upon or involved in the decisions rendered on the appeals; nor, for the reasons stated, could it have been considered if the plaintiff had gone to a new trial. The fundamental objection to the counter-claim was not waived or cured by the reply. (*Smith v. Hall,* 67 N. Y. 48.)

The ground already stated is sufficient to sustain the order appealed from. But behind and beyond that, lies the further insuperable objection to the recovery claimed, that the court had no power to render an affirmative judgment against the State. This point has been so fully covered by the opinion of WESTBROOK, J., at Special Term, that it is not necessary to review in detail the authorities upon the subject and the points so ably and forcibly pressed upon the court by the learned counsel for the appellants. We shall, therefore, do little more than state our conclusions.

The position that a State or sovereign, by coming into court as a suitor, abandons its sovereignty and subjects itself to any affirmative judgment which the court may render against it upon a set-off or counter-claim cannot be maintained. It is opposed to all the authorities, and the principle upon which they are founded, and the dicta of learned judges which have been cited in its support, though maintaining the right of

set-off, do not necessarily go to the extent claimed, of asserting that an affirmative judgment may be rendered against the government for any balance found due from it.    While the government may, through its courts, enforce its claims against its citizens, this right is not reciprocal.    A set-off is in the nature of a cross-action, and the government cannot be sued except by its own express permission.    This is a universal principle applicable to every sovereignty, and often recognized in the courts of the United States.    The right of a debtor of the United States government, when sued by it, to interpose a counter-claim or counter-credit, even to the extent necessary to protect himself against the claim of the government, is conceded in all the cases to rest upon the provisions of the act of March 3, 1797 (§§ 3 and 4), which require that such counter-credits be first submitted to the proper accounting officers.    They can only be set up in court after having been disallowed by such officers, except in special cases.    It was supposed at one time that this statute authorized the court to render judgment against the government for any balance found due the defendant, and there are some instances of judgments of Circuit Courts to that effect.    (*U. S.* v. *Bank of Metropolis*, 15 Pet. 377.)    But this doctrine was not sustained by the Supreme Court.    A defendant sued by the government may, under the statute referred to, and on complying with its conditions, give in evidence any counter-claim or credit he may have in his own right, and which is a proper subject of set-off, whether arising out of the transaction on which he is sued or an independent transaction (*U. S.* v. *Wilkins*, 6 Wheat. 135), but it is now well settled that such counter-claim is available only to the extent necessary to defeat the claim of the government, and that no judgment can be recovered against the government for the excess, should there be any.    (*Reeside* v. *Sec. of Treas.*, 11 How. 272; *De Groot* v. *U. S.*, 5 Wall. 431; *U. S.* v. *Eckford*, 6 id. 484.)    No action can be sustained against the government except by its own express consent, under some special statute allowing it (11 How. 290), and to permit a demand set up by way of counter-claim

against the government to be proceeded upon to judgment against it, would be equivalent to permitting a suit to be prosecuted against it. (Id.)

Authority to render a judgment against the State or government, in one of its own courts, cannot be implied but must be express, nor can it be claimed under general laws in which the State is not named.    (19 Wall. 239.)

The learned counsel relies upon 2 Revised Statutes, 552, 553, section 13, as conferring authority to render the judgment in question.    That provision is as follows:

"Every suit or proceeding in a civil case instituted in the name of the State, by any public officer duly authorized for that purpose, shall be subject to all the provisions of law respecting similar suits and proceedings, when instituted by or in the name of any citizen, except where provision is or shall be otherwise expressly made by statute; and in all such suits and proceedings the people of this State shall be liable to be nonsuited and to have judgments of *non pros.* or discontinuance entered against them in the same cases, with like manner, and with the same effect, as in suits brought by citizens, except that no execution shall issue therein."

The first branch of this section, which in general terms subjects suits brought by the State to all provisions of law respecting similar suits brought by a citizen, would, we think, even if standing alone, be insufficient to confer authority to render an affirmative judgment against the State upon a counter-claim or set-off.    If such effect had been intended, it would have been specifically declared, and the machinery for paying such judgments would have been provided.    But that it was not so intended is made clear by the subsequent express grant of power to render certain judgments, such as "*non pros.*," "discontinuance," etc.    It seems to have been deemed necessary to enumerate these judgments, as they empower the defendant to take affirmative steps against the State to turn it out of court on account of its own laches.    It cannot be supposed that if it had been intended to confer upon the courts the power of rendering affirmative judgments against the State,

founded upon set-offs or counter-claims, the legislature would have failed to enumerate that novel and extraordinary power, while taking pains to mention those of so much minor importance.

The stipulation given by the attorney-general, on taking the appeal to this court, is relied upon as some sort of an assent to the judgment in question. We cannot so construe it. It was a stipulation which the law compelled him to give, to enable him to take the appeal to this court from the order granting a new trial, and its form was, that in case the new trial should be denied, judgment absolute might be rendered against the appellants.

This stipulation waived no legal objection which might exist to the counter-claim, and no immunity of the State from an affirmative judgment against it. It authorized the court to render only such judgment as it was justified by law in rendering, and had had power to pronounce. It simply waived a new trial and rested the plaintiff's case upon the question whether the judgment of the referee should be sustained, or whether it was properly reversed by the General Term. If the reversal was sustained, it was made absolute, and ended the case so far as the right of the plaintiff was concerned. The question of the right of the defendants to go further, and obtain judgment on their counter-claim against the State, was left for the court to determine, and was not affected by the stipulation.

The counsel for the appellants further contends that the counter-claim, having been put in issue in this action, will be barred if the judgment below is not sustained. We do not think any such result can follow. What we decide is that the defendants' demand for the balance claimed to be due them for work done under their contract, was not a proper subject of counter-claim in this action. It was, therefore, not properly in issue therein. It has never been tried or adjudicated upon, and if it had, the court had no power to render judgment thereon against the State. Another mode of redress is provided by statute in such cases, and if the defendants have any just claim against the State they must apply for relief to the board of

audit, the tribunal instituted by the State for passing upon such claims. As their claim was not triable or recoverable in this action, the judgment rendered herein does not conclude the defendants in respect thereto.

The order should be affirmed, with costs.

All concur.

Order affirmed.