THE CITY OF SCHENECTADY, Respondent, *v.* ROBERT
FURMAN, Appellant.

*Cities — a resolution of a common council, not passed in accordance with its charter,
confers no authority — right to a jury trial — taking property without notice or
compensation is unconstitutional — audit, without notice, made* prima facie *evi-
dence — counter-claim.*

A natural water-course, not navigable, ran through a city, and at the *locus in quo*
was wholly within the land of a lot owner. The city, on April sixteenth, by its
common council, passed a resolution which stated that obstructions existed in
the creek, fixed a width and a grade for its banks, and declared all earth and
other matter lying in and above such grade and channel to be obstructions and
deposits. Pursuant to the charter a notice of five days was given of a hearing
upon such resolution, and on April twenty-third the resolution was confirmed
by the common council. This body, on May seventh, by a resolution changed
the dimensions of the channel. The latter resolution, of which no notice was
given, was never confirmed.

In an action brought by the city to recover for the work done by the city superin-
tendent of streets in removing the alleged obstructions and deposits under these
resolutions, from the lot owner who refused to pay such expense:

*Held,* that as the city superintendent had acted under the original resolution, as
amended on May seventh, and as the amendment had never been confirmed after
notice, as required by the charter, the city had no right to do the work.

The city charter gave the common council power to require the removal of encroach-
ments in such a stream, but in the case of an encroachment provided for a trial
by jury of the question as to there being an encroachment:

*Held,* that the city could not, by calling an encroachment a deposit, deprive the
owner of a jury trial, nor, under a claim that there were deposits or obstructions,
remove banks and trees growing thereon.

Another provision of the charter gave to said common council power to establish
the boundaries and grades of natural water-courses, "provided, however, that
none of the rights of any of the owners of lands bounded or abutting upon such
water-courses or streams shall be impaired or affected." There was no provision
in the statute for a hearing of the owner.

*Held,* that whatever rights the city might have to remove obstructions and deposits,
it had none to take away the property of the owner without notice, and without
compensation, upon the pretext of fixing a boundary or a grade.

*Semble,* that a provision in a city charter that it may recover, as the expense of
such work, from the owner or occupant, a sum to be audited by it without
notice to the owner or occupant, and that the account certified as audited shall
be presumptive evidence of the right of the city to recover it, does not bar the
owner from showing the true extent and value of the work.

The owner set up as a counter-claim to the action the injury done to his land.

*Held,* that, within section 501 of the Code of Procedure, as amended in 1877, such a counter-claim, as it could only be established by proof that the plaintiff had no cause of action, did not "tend in some way to diminish or defeat the plaintiff's recovery."

APPEAL by the defendant Robert Furman from a judgment, entered in the office of the clerk of the county of Schenectady on the 13th day of December, 1890, in favor of plaintiff, after a trial at the Schenectady Circuit before the court and a jury, at which a verdict was rendered, by direction of the court, in favor of the plaintiff for $269.13.

*Robert J. Landon,* for the appellant.

*S. W. Jackson,* for the respondent.

LEARNED, P. J.:

This action is brought to recover the expense of work done by the plaintiff, through its superintendent of streets, in removing alleged obstructions and deposits in that part of a certain stream called Mill creek, which runs through defendant's land. The stream is a natural water-course, not navigable, and the part in question is wholly within defendant's land. The bed of this stream, therefore, is his, and he is the riparian owner. As such he has a right to the use of the water, being also under obligations to the owner below him in respect to the manner of its use. The plaintiff is not shown to be a riparian owner of any part of the stream, or to have any rights, whatever, therein. Although this part of the stream is within the boundaries of the city, still it is not a public highway, but belongs to the several riparian owners, according to the settled rules of law in respect to such streams. (*Bickett* v. *Morris,* L. R., 1 House of Lords [Scotch Appeal Cases], 47.)

The plaintiff claims no right as riparian owner. But it claims authority under the charter of the city. The important sections are to be found in chapter 97, Laws of 1889, the sixth section of which amends the charter by adding on section 61 to title 7; in chapter 62 of the Laws of 1873, the thirty-second section of which amends title 7, of which amended title, sections 48, 52 and 53, on pages 135 and 136, are material; in chapter 146 of Laws of 1877, section 2 of which amends title 3 by adding a new section (16), and

section 3 amends the fifty-first section of title 7, as it has been enacted by the law of 1873 aforesaid.

Section 16, above-mentioned, declares that the common council shall have power to establish and define the boundaries and grades of the natural water-courses and streams in said city, and to provide for and compel the removal of obstructions, encroachments and deposits. The section contains this proviso: "Provided, however, that none of the rights of any of the owners of lands bounded or abutting upon such water-courses or streams shall be impaired or affected by this act."

On the 16th of April, 1889, the common council passed a resolution of several clauses. The first declares that there are obstructions and deposits in a certain part of Mill creek. The third describes a certain grade or width of said creek (being, generally, a width of eight feet at the bottom, and with side banks sloping one and one-half to one) for a certain distance. This it declares to be the "natural and normal channel and grade of the said portion of the said creek, and all earth and other matter lying in and above such grade and channel, as so described, are obstructions and deposits in said stream.".

The fourth clause directs the owners and occupants of land adjoining said portion of said creek to remove said obstructions and deposits on or before certain days. And the fifth directs the superintendent of streets to do the work if the owners and occupants fail, and declares that the expense shall be assessed on the lot. A notice of five days was given pursuant to section 61, and the resolution was confirmed April twenty-third. On the seventh of May the common council amended the resolution so adopted and confirmed by making the width of the bottom of the creek less and the slope of the banks different. On the ninth of July the common council ordered the superintendent of streets to enforce these resolutions, including that of May seventh, and to do the work which the parties had neglected to do. On the eighth of October the common council audited his account for doing such work, and ordered the city attorney to sue for and collect the accounts remaining unpaid. Therefore, this action was brought.

It will be seen that the resolution of July ninth directed the superintendent to do this work under the resolutions of April six-

teenth, April twenty-third and May seventh. The superintendent testifies that he did the work under the resolution as amended. It does not lie with the plaintiff to say, therefore, that the amendatory resolution of May seventh was of no effect. The plaintiff treated it as valid and the work was done accordingly.

Now section 61, above mentioned, is explicit on this point. After the common council has passed a resolution of this kind it must give five days' notice; and at the time and place mentioned in the notice shall hear all parties interested, and after such hearing shall consider the ordinance and may confirm, modify or rescind. " No such ordinance or resolution shall create any duty or obligation until it shall be confirmed or modified as aforesaid." The common council did on the twenty-third of April confirm that resolution. They then on the seventh of May amended it without notice to the parties interested. This they had no right to do. All their subsequent action was based upon that amendment. They did not cause the alleged obstructions and deposits to be removed according to the resolution of April twenty-third, but according to that of May seventh. There is no force in saying that the resolution of May seventh diminished the amount to be removed. The parties interested had a right to be heard as to the matter. They might have good reason for desiring that the resolution, as originally passed, should be carried out. The plaintiff cannot urge that the defendant was not injured by the change. The notice of five days was jurisdictional; and when the common council had acted they could not change the resolution; at least not without again giving the required notice. Probably, after the resolution of April twenty-third, the common council were not bound to do the work. But, if they did proceed with the work, they must proceed under that resolution and under no other; if, indeed, they had any right to proceed at all.

A more important question is upon the right of the plaintiff to do the acts for which it claims compensation, even supposing that the resolution had been properly passed and confirmed, and had not been affected by any subsequent resolution.

Section 16, title 3 of the charter, says that the common council may remove encroachments in the manner thereinafter provided. Section 51 of title 7 uses the same language, but says that no action shall be taken based on alleged encroachments until the encroachment

shall have been established as provided in sections 4, 5, 6 and 7 of that title.    Now, it is not pretended that any proceedings were taken under these sections 4, 5, 6 and 7 to establish that there was an encroachment.    For these proceedings provide for a trial by jury, and the plaintiff, on this argument, has insisted that its action was not taken under the clause against encroachments, but under the clause of section 51, to remove deposits and obstacles.

If the plaintiff's action was not to remove encroachments, it follows that plaintiff could not lawfully remove any of the existing banks of the stream.    For if such banks were in any respect an interference with the flow of the stream, then they must be encroachments thereon, and could not be deposits or obstructions in the stream.    A bank is not a deposit in the stream, nor is it an obstruction, as distinct from an encroachment.    It appears from the evidence that there were trees along the banks where the stream passed through defendant's land, which trees the plaintiff cut down and the roots of which plaintiff dug out.    This fact shows that these trees, and the banks on which they stood, could not have been deposits or obstructions in the stream.    If these banks and these trees were nearer to the center of the stream than the original banks were, then they might be encroachments.    If they were claimed to be encroachments, then the plaintiff could not act in respect to them except, under the sections above cited, giving a jury trial, etc.    But no such proceedings were taken.

Very plainly the plaintiff cannot, by calling an encroachment a deposit, deprive the defendant of his right to a jury trial.    And the words deposits and obstructions plainly designate different things from the word encroachments.    But the plaintiff claims, under section 16 above cited, the right to establish and define by resolution the boundaries and grade of this stream, and claims that by its resolution it did this.    The first objection to this is that defendant had no opportunity to be heard.    There is no provision in section 16 for publishing a notice, and for giving a hearing to the parties interested.    That provision is found in section 51, above cited, of another title, and refers to the resolution directing the removal of deposits and obstructions.    Section 51 says nothing about establishing the boundaries and the grade.    If there is any authority to do this, it is found only in section 16; and that section does not

provide for a hearing. If that section is valid, therefore, the common council may, by resolution, declare the boundaries and grade of this stream. It may thus make new boundaries and a new grade, and may cause the natural boundaries to become encroachments in violation of the rights of the riparian owner, and contrary to the provisions of sections 4, 5, 6 and 7 above cited, respecting encroachments.

But the natural boundaries and grade of this stream, as it passes through defendant's land, limit and define the defendant's right of property. He is the owner of the banks as they naturally stand. To widen the stream and take away his banks is to deprive him of his property. The plaintiff cannot do this by resolution. The plaintiff cannot, without depriving defendant of his property, make the stream wider than it naturally was. It needs no argument to show that to declare a stream to be ten feet wide, which was originally only five, takes, if the declaration has any force, a strip of land from the riparian owner.

The legislature seems to have appreciated this, for in this section 16 they provided that none of the rights of any of the owners of land bounded or abutting upon such water-course or stream should be impaired or affected by this act. Hence it is apparent that no resolution passed under this section could deprive the defendant of his rights as riparian owner or take away any of his property. The legislature might as well authorize the common council to establish and define the boundaries of defendant's land on all sides. What rights the plaintiff may have to remove deposits and obstructions in the actual channel we need not decide. It did much more, it cut away the existing banks of the stream on defendant's land, and the trees which stood thereon; and it did this on the pretended authority of a resolution which attempted to establish a different width and a different grade of the stream from those which actually existed. If the width and grade had not been different from those which existed the banks and trees would not have been disturbed.

It is no answer to this that defendant had notice of the second passage of the resolution. The last clause of section 16 limited plaintiff's power, notice or no notice; and, as has above been shown, the charter provides for no notice of the establishment of bounda-

ries and grade. Even if there were no such clause in section 16, the law makes such a clause. No common council can, by resolution, take away private property under the pretence of establishing its boundary.

If this be defended as the taking of private property for public use, the answer is that no compensation is provided. Worse still, the defendant is made to pay for being deprived of his property. If the public good required a wider water-course and a different grade, and for that purpose defendant's property was needed, then he should have been compensated.

The resolution shows plainly its faulty character. It lays down a certain grade and a certain width of the bottom, and a certain slope of the bank, and then declares that all earth and other matter lying in and above such grade and channel are obstructions and deposits in the stream. Evidently, therefore, the common council assumed the right to make a new channel of different dimensions from the old, and to call everything above such channel deposits and obstructions. The common council could with equal propriety have made a new channel in a new place through defendant's land, and have called the earth which it would be necessary to remove "deposits and obstructions."

It cannot be necessary to cite authorities to show that the defendant was owner of the land over which the stream flowed, and had a right to the use of the stream, subject only to the similar rights of the upper and lower proprietors. The common council is not a tribunal to determine these rights, And defendant offered to show that, after the passage of the resolution, he cleaned out the stream so that it was of the same width and depth that it had been for many years prior thereto, but this evidence was excluded. This was, in effect, holding that the common council had a right to make, by resolution, the width and depth of the stream greater than they had been; that is, to establish and declare boundaries, other than they originally were.

After the work had been done, the superintendent of streets returned the amount to the common council and that body audited it under section 48. If we look at the charter, as amended by chapter 62, Laws of 1873, we find that title 7, containing sixty

sections, is re-enacted with amendments. Section 51 of that title is again amended by chapter 146, Laws of 1877. Section 53 authorizes the expense to be audited and enforced as specified in reference to paving streets. And the provisions as to enforcing the expense of paving are found in the previous section 48. This declares that the city may recover from the owner or occupant the sum audited, with twelve per cent interest; and that the account certified as audited shall be presumptive evidence to entitle the city to recover. Now, this auditing is done without any notice to defendant; he is not in any way a party. The work may be done without his knowledge. The superintendent states the amount expended without defendant's knowledge; he determines what the extent of defendant's property is and how much labor was expended in front of it. On this *ex-parte* statement the common council, without giving defendant an opportunity to be heard, audit and allow the account, and such audit and allowance is presumptive evidence against defendant. The defendant urges that under *Stuart* v. *Palmer* (74 N. Y., 183), and similar cases, this provision is unconstitutional. In the view we have taken of other questions, it becomes unnecessary to decide this point. We are, however, inclined to think that, as the audit is only presumptive evidence, the defendant has his day in court by having the right to show the value and extent of the work done in front of his land. (*Hagar* v. *Reclamation Dist.*, 111 U. S., 701.)

The defendant set up a counter-claim for injury done to his land. And the question arises whether, if plaintiff cannot recover, defendant may be allowed to prove this counter-claim in this action.

By an amendment of 1877, section 501 of the Code contains the words: "must tend in some way to diminish or defeat the plaintiff's recovery." These words were not in the section when the case of *Glen & Hall Mfg. Co.* v. *Hall* (61 N. Y., 226) was decided.

Now, if the plaintiff is entitled to recover in this case on the cause of action alleged, then plaintiff committed no trespass and defendant has no right of action. This counter-claim cannot tend to diminish or defeat plaintiff's recovery. It is entirely inconsistent with any cause of action on plaintiff's part.

In *Carpenter* v. *Manhattan Life Insurance Company* (93 N. Y., 552), the plaintiff had a cause of action against the defendant for

the conversion of the wood. Defendant's counter-claim arose out of its equitable right as mortgagee to insist that its security should not be changed by plaintiff's cutting the wood. The counter-claim, therefore, tended to defeat plaintiff's legal claim.

This present action is brought under the charter to recover for money expended by plaintiff, and is in the nature of an action for money paid for the benefit of defendant (§ 48), although we are not disposed to say that it is an action on contract. The counter-claim is for trespass committed by plaintiff by the acts in doing which the money was expended. It probably could not be said that this counter-claim for trespass arose out of the transaction set forth as the foundation of plaintiff's claim. (*People* v. *Dennison*, 84 N. Y., 272.) The work done by plaintiff on the land would not constitute the claim. That must arise on the previous resolutions and the subsequent audit. If plaintiff is correct in its claim, the audit is evidence, without proof of the work. At any rate, the work alone is not the foundation of plaintiff's claim. And, however this may be, we think that the clause above cited from the section shows that the allegations of defendant's answer cannot be allowed as a counter-claim. For it is evident that they could not be proved as a claim until it was decided that plaintiff had no claim. Hence they could not diminish or defeat plaintiff's recovery.

The judgment should be reversed, new trial granted, costs to abide event.

MAYHAM, J., concurred.

Judgment reversed, new trial granted, costs to abide event.