THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* GREYLOCK CONSTRUCTION COMPANY, INC., and Another, Respondents.

Fourth Department, May 6, 1925.

**State — action by State to recover for breach of highway construction contract — defendant cannot plead counterclaim arising out of breach of same contract — Civil Practice Act, §§ 1206 and 1207, do not authorize defendant to plead counterclaim — Civil Practice Act, §§ 261 and 266, not applicable.**

In an action by the State of New York to recover damages for the breach of a highway construction contract, the defendant cannot plead a counterclaim against the State based on an alleged breach of the same contract; sections 1206 and 1207 of the Civil Practice Act do not authorize the defendant to plead a counterclaim against the State notwithstanding the provisions of sections 261 and 266 of the Civil Practice Act.

APPEAL by the plaintiff, The People of the State of New York, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Jefferson on the 12th day of May, 1924, denying plaintiff's motion to strike out the counterclaim from defendants' answer.

*Albert Ottinger, Attorney-General [Fred E. Lewis, Deputy Attorney-General,* and *Charles E. McManus* of counsel], for the appellant.

*Parsons, McClung & Rose [Arthur E. Rose* of counsel], for the respondents.

TAYLOR, J.:

The defendant Greylock Construction Company, Inc., made a contract with plaintiff through the State Commission of Highways for highway construction in the county of Jefferson. The defendant National Surety Company was surety on the bond of the construction company for faithful performance. Plaintiff has sued both defendants, claiming breach of contract on the part of the construction company, and demanding more than $20,000 damages.

The defendant construction company in its answer counterclaims $7,050 against the State for breach of contract. From an order of the Special Term denying plaintiff's motion to strike out said counterclaim and the affirmative allegations supporting it, plaintiff has appealed.

No statutory or constitutional provision is required to save the State from suits against it by individuals.

" It is elementary law that the State being a sovereign cannot be sued except with its own consent, * * * subject, of course, to the one qualification found in the Federal Constitution,* that an action may be maintained by one State against another State." (*Sanders* v. *Saxton,* 182 N. Y. 477.)

The only question we have to determine is whether, in a contract action brought by the State against an individual, a counterclaim on contract may be interposed.

Fair dealing and the diminishing of litigation argue in favor of permitting such relief. As stated by the United States District Court for the Southern District of New York (*The Gloria [Kingdom of Norway* v. *Federal Sugar Refining Co.*], 286 Fed. 188, 192, 193): " The right of counterclaim and set-off having been first introduced as a part of our procedural law, halting recognition is just beginning to be given to the fact that the right as between litigants is something more than a procedural convenience and is really a requirement of substantive justice. * * * If the right of set-off and counterclaim be regarded as a mere matter of procedure, there would seem

* See U. S. Const. art. 3, § 2; Id. 11th Amdt.— [REP.

to be no reason why a right against a sovereign State should be recognized by set-off or counterclaim, which could not be set up in an independent suit.    On the other hand, if the right of set-off or counterclaim is to be regarded as affecting the substantive relations between the litigants, the question presented assumes an entirely different aspect.    \*    \*    \*    While a court may have no power to enforce an affirmative judgment against a sovereign State, still if, as a defense to a suit instituted by a sovereign State, a counterclaim or set-off is asserted, it would seem only proper that the court determine all issues fairly before it, even though it involve a finding that the plaintiff State was indebted to the defendant.''

However, the trend of authority in the various States is to the effect that a defendant cannot have the benefit of a counterclaim against the State which constitutes an independent cause of action. Consent (to the allowing of such counterclaim) should be given in express terms, at least in terms so clear and unambiguous as necessarily to imply consent.    (36 Cyc. 910, 913.)

*People* v. *Corner* (59 Hun, 299; affd., 128 N. Y. 640) was an action on contract.    A counterclaim based on contract which would have been otherwise allowable, was disallowed on the express ground that under such circumstances affirmative relief could not be had against the State without its consent.    Even the right to set-off was denied in that opinion, which seems contrary to the view expressed in *People* v. *Brandreth* (36 N. Y. 190, 196).    However, we are dealing with a counterclaim, with something more than a mere set-off.    *People* v. *Corner* (*supra*) was mentioned with approval in *People ex rel. W. U. Tel. Co.* v. *Roberts* (30 App. Div. 78, 81; affd., 156 N. Y. 693).

*People* v. *Dennison* (84 N. Y. 272) was a tort action, wherein a counterclaim based on contract was disallowed because it did not arise out of the transaction covered by the complaint.    However, the court proceeded (obiter) to discuss the general subject of counterclaim in an action brought by the State.    The court quotes 2 Revised Statutes (pp. 552, 553, § 13), which provides as follows: '' Every suit or proceeding in a civil case, instituted in the name of the People of this State, by any public officer duly authorised for that purpose, shall be subject to all the provisions of law respecting similar suits and proceedings, when instituted by or in the name of any citizen, except where provision is or shall be otherwise expressly made by statute; and in all such suits and proceedings, the People of this State shall be liable to be non-suited, and to have judgments of *non-pros* or of discontinuance entered against them, in the same cases, in like manner and with the same effect, as in suits brought by citizens, except that no execution shall issue thereon.''

The court said: "The first branch of this section, which in general terms subjects suits brought by the State to all provisions of law respecting similar suits brought by a citizen, would, we think, even if standing alone, be insufficient to confer authority to render an affirmative judgment against the State upon a counterclaim or set-off. * * * It cannot be supposed that if it had been intended to confer upon the courts the power of rendering affirmative judgments against the State, founded upon set-offs or counterclaims, the Legislature would have failed to enumerate that novel and extraordinary power, while taking pains to mention those of so much minor importance."

Said section 13 of title 17 of chapter 8 of part 3 of the Revised Statutes became sections 1984 and 1985 of the Code of Civil Procedure without material change except that the provision as to liability of the State to nonsuits and judgments of discontinuance was omitted. And it is to be observed that said Code sections were in effect when the opinion in *People* v. *Dennison* (*supra*) was written.

These Code sections became sections 1206 and 1207, respectively, of the Civil Practice Act and the following changes appear: Section 1206 is distinguished from its predecessor only in that it is made to apply to all actions in behalf of the People; and the provision in section 1985 of the Code of Civil Procedure in respect to non-issuing of execution against the State is now section 659 of the Civil Practice Act, and the provision of section 1984 of said Code as to the commencement of action is now section 1202 of the Civil Practice Act. Furthermore, sections 1206 and 1207 of the Civil Practice Act except from their operation matters especially prescribed " by statute or rule " instead of by " law," as stated in section 1985 of the Code of Civil Procedure.

It is contended that by substituting for said Code of Civil Procedure sections the Civil Practice Act sections, thus altered, the Legislature gave consent to the enforcement of counterclaims against the State. Neither *People* v. *Corner* (*supra*) nor *People* v. *Dennison* (*supra*), in thus limiting the right to counterclaim, has ever been overruled or disapproved.

In the cases of *The Gloria* and *Kingdom of Norway* v. *Federal Sugar Refining Co.* (*supra*) the court (p. 202) says that " one might venture the *quære* whether this narrow rule [denying the right to counterclaim] will prevail under the new Civil Practice Act, notwithstanding the similarity of its provisions with those of the former Code." If the well-established doctrine is to be abandoned in this State, the authority therefor should come from the Legislature by direct enactment or by an interpretation of the present statute to that effect by our court of last resort. We are of the opinion that

had the Legislature intended to give the right to affirmative relief to a defendant sued by the State, it would have done so in certain terms and not thus indirectly and inferentially. The provisions of said sections 1206 and 1207 of the Civil Practice Act seem to be procedural only and not to grant the substantive right claimed. And we do not find that the State has otherwise granted that substantive right. It follows that the right given by sections 261 and 266 of the Civil Practice Act to interpose a counterclaim on contract in an action on contract does not apply in an action brought by the State against an individual.

It follows that the order appealed from should be reversed and the motion granted.

HUBBS, P. J., CLARK, DAVIS and CROUCH, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.