## Nern et al. v. Employes' Liability Assurance Corp.

M. *Louise Rutherford*, Deputy Attorney General, and *James H. Duff*, Attorney General, for the Commonwealth.

*F. Brewster Wickersham*, of *Metzger & Wickersham*, and *George Meyer*, for the defendant.

RUPP, J., January 29, 1946.—This matter comes before us on a rule to show cause why a counterclaim should not be dismissed for lack of jurisdiction in this court to entertain it.

For our present purposes we need only state that plaintiffs sued in assumpsit to recover from defendant company the sum of $21,450, with interest from July 24, 1941, the balance allegedly due plaintiffs by reason of the theft of certain surplus commodities stamps to the value of $64,350. The statement of claim alleges that the Commonwealth of Pennsylvania, Department of Public Assistance, use plaintiff, is indemnified against such loss by an insurance policy of defendant and that the Commonwealth has reimbursed the proper

Federal agency for the entire amount of the stolen stamps entrusted to it, to wit, $64,350.

Defendant filed an affidavit of defense with a counterclaim. In its affidavit it averred that it is not indebted to plaintiffs in any amount whatsoever under the aforesaid policy by reason of the theft. In its counterclaim it averred that "under a mutual mistake of fact" it paid the sum of $42,900 to the Commonwealth and therefore demands that amount of the Commonwealth with interest from August 29, 1941, the date of payment.

At the outset, no extended citation of authority is necessary to show that a counterclaim, in and of itself, is a separate suit, and it has been so defined. Thus, in 4 Standard Pennsylvania Practice 415, we find:

"A counterclaim is a claim presented by a defendant in opposition to, or deduction from, the claim of the plaintiff. It is, in effect, a declaration by the defendant against the plaintiff in the nature of an independent action deferred until the defendant is brought into court."

And in 47 Am. Jur. 717:

"The counterclaim is in itself a distinct and independent cause of action, so that when properly stated as such, the defendant becomes, in respect to the matters stated by him, an actor, and there are two simultaneous actions pending between the same parties, wherein each is at the same time both a plaintiff and a defendant. Counterclaim is an offensive as well as a defensive plea and is not necessarily confined to the justice of the plaintiff's claim. It represents the right of the defendant to have the claims of the parties counterbalanced in whole or in part, and judgment to be entered for the excess, if any."

In Pennsylvania, counterclaimants not only are faced with a wealth of opinion law, both of this and

other jurisdictions, to the effect that because of the sovereign's inherent immunity from suit it cannot be sued without its consent, but with article I, sec. 11, of our Constitution, which provides, inter alia:

"Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

and section 1003 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1003, which states:

"The Auditor General and State Treasurer shall continue to have the power to adjust and settle claims against the Commonwealth, as now provided by law, and they shall settle an account with any claimant against the Commonwealth in the manner following:

"When the Department of the Auditor General shall have examined and adjusted any claim against the Commonwealth, it shall submit the same, together with the vouchers and all other papers and information appurtenant thereto, to the Treasury Department for its revision and approbation. Thereafter, the procedure shall be the same as in the case of the audit of requisitions as hereinafter in this act provided."

Here, defendant has an even higher hurdle to surmount. It admits both it and the Commonwealth cannot recover in this action and that the adjudication of the Commonwealth's claim will automatically adjudicate the counterclaim. Hence, defendant's counterclaim is not a cross demand by way of defense, nor a counterclaim by way of diminution of an acknowledged debt due the Commonwealth. Defendant is disclaiming any indebtedness to the Commonwealth while alleging that the Commonwealth owes it a specified amount and specifically "demands of The Commonwealth of Pennsylvania the said sum of $42,900, with interest from August 29, 1941". In other words, defendant is seeking an affirmative judgment against the Commonwealth. It follows the question for our

determination is not, as argued before us, whether a counterclaim can stand against the Commonwealth by way of setoff, but whether a counterclaim can stand which asks an affirmative judgment against the sovereign.

We neither have been referred to, nor have we discovered, any Pennsylvania case which permitted either type of counterclaim against the sovereign. In fact, so far as we have been able to ascertain, no State or Federal court has permitted an affirmative money judgment against a sovereign by way of counterclaim. Even in those jurisdictions where, unlike Pennsylvania, the sovereign, by statute, has waived certain immunities from suit, an affirmative money judgment has not been allowed against the sovereign by way of counterclaim.

For example, by the Act of Congress of March 3, 1797, and its successor legislation (1 Stat. at L. 512, 514), 28 U. S. C. A. sec. 774, as interpreted by the Supreme Court of the United States, crossclaims are allowed against the United States to the amount of the Government's claim, where the Government voluntarily sues. Likewise, specially designated claims against the United States may be sued upon in the Court of Claims or the district courts under the Tucker Act of 1887 (28 U.S.C.A. sec. 41 (20). And special Government activities, set apart as corporations or individual agencies, have been made suable. Yet this legislation has been most stringently construed, actions have been confined to the courts specified, and the particular immunity waived, and claims not even considered until submitted to and refused by the Government accounting officers.

Thus, the Supreme Court of the United States has consistently held, as in DeGroot v. United States, 5

Wall. (U. S.) 419, 18 L. Ed. 700 (1867), that (L. Ed. page 703):

"The government of the United States cannot be sued for a claim or demand against it without its consent. This rule is carried so far by this court, that it has been held that when the United States is plaintiff in one of the Federal Courts, and the defendant has pleaded a set-off which the Acts of Congress have authorized him to rely on, no judgment can be rendered against the government, although it may be judicially ascertained that on striking a balance of just demands the government is indebted to the defendant in an ascertained amount."

And in Schaumburg v. United States, 13 Otto. 667, 26 L. Ed. 599 (1881) (L. Ed. page 599):

"Claims for credit can be used in suits against persons indebted to the United States to reduce or extinguish the debt, but not as the foundation of a judgment against the government."

In the recent case of United States v. Shaw, 309 U. S. 495, 84 L. Ed. 888 (1940), the Supreme Court of the United States, speaking through Mr. Justice Reed, said:

"Because of different views of other federal courts as to the decisions of this court in the important federal field of cross-claims against the United States, we granted certiorari."

There the specific question was whether the United. States, by filing a claim against an estate in a State court, subjects itself, in accordance with local statutory practice, to a binding, though not immediately enforcible, ascertainment and allowance by the State court of a crossclaim against it. In reversing the allowance of the crossclaim by the Supreme Court of Michigan, which was in excess of the claim of the United States, the court recited the particular limita-

tions within which the Government immunity has been waived and said (L. Ed. 892) :

"Respondent contends this immunity extends, however, only to original suits; that when a sovereign voluntarily seeks the aid of the courts for collection of its indebtedness it takes the form of a private suitor and thereby subjects itself to the full jurisdiction of the court. . . .

"It is not our right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress. . . . Against the background of complete immunity we find no congressional action modifying the immunity rule in favor of cross-actions beyond the amount necessary as a set-off."

The court then proceeded to distinguish the case of United States v. The Thekla, 266 U. S. 328, 69 L. Ed. 313 (1924), relied upon by defendant here, by pointing out that The Thekla turns upon a relationship characteristic of claims for collision in admiralty, and added (L. Ed. 893) :

"There is little indication in the facts or language of The Thekla to indicate an intention to permit generally unlimited cross-claims. Quotations from The Thekla in later opinions of this Court are used to illustrate problems entirely apart from the one under consideration here."

The court also interpreted the above-quoted language from DeGroot v. United States, supra, adopted in United States v. Eckford, 6 Wall. (U. S.) 484, 18 L. Ed. 920 (1868) to mean (L. Ed. 894) :

"no judgment may be entered against the government even though the court has ascertained through its processes that the government is actually indebted to the defendants."

In United States v. Biggs, et al., 46 F. Supp. 8 (1942) the District Court of the United States for the Eastern District of Illinois had before it the pro-

priety of a counterclaim against the United States, for a balance allegedly owing by it to defendants under a contract, based on the Tucker Act, supra, and rule 13 of the Federal Rules of Civil Procedure (28 U. S. C. A., following sec. 723c), which rule provides, generally, that when a complaint is filed, all counterclaims arising out of the same transaction must be set up. In ruling out the counterclaim, the court said (page 10):

"Since statutory relaxation of the rule is an exception to a fundamental principle of government, the courts have been careful not to extend jurisdiction in suits against the United States beyond the exact limitations prescribed by Congress.

"If a suit is brought by the United States against a defendant for an amount allegedly due the United States, defendant may properly set up by way of defense any amount owing him to the extent of such claim. The court, however, has no jurisdiction to render an affirmative judgment against the United States on a counterclaim. United States v. Shaw, 309 U. S. 495, 60 S. Ct. 659, 84 L. Ed. 888; United States v. Nipissing Mines Co., 2 Cir., 206 F. 431; United States v. Eckford, 6 Wall. 484, 18 L. Ed. 920. In United States v. Nipissing Mines Co., supra, [206 F. 434], the court said: 'In our opinion, the Tucker Act of 1887 which gives the District Courts jurisdiction over certain suits against the United States, is not broad enough to permit the recovery of demands upon counterclaims. We think that that statute refers to original suits and prescribes procedure inconsistent with its use as the basis of a counterclaim.' . . . If this court were to take cognizance of defendant's counterclaim and give judgment upon it, it would exceed its specifically defined jurisdiction of suits against the United States under the Tucker Act.

". . . To permit the claim against the United States would be to render an affirmative judgment against the United States on a counterclaim which, in the light of prevailing reasoning, is no part of the statutory proceedings. United States v. Shaw, supra; United States v. Nipissing Mines Co., supra; United States v. Eckford, supra."

The State of New York also has waived certain immunities from suit. However, its courts have been careful to remain within the limitations of those waivers and repeatedly have held that affirmative judgments against the sovereign cannot be allowed on a counterclaim.

Thus, People v. Dennison et al., 84 N. Y. 272 (1881), was a tort action, wherein a counterclaim based on contract was disallowed because it did not arise out of the transaction covered by the complaint. The Court of Appeals of the State of New York, by way of dicta, then proceeded to discuss the general subject of counterclaim in an action brought by the State. In this connection it stated (page 282):

"The learned counsel relies upon 2 Revised Statutes, 552, 553, section 13, as conferring authority to render the judgment in question. That provision is as follows:

" 'Every suit or proceeding in a civil case instituted in the name of the State, by any public officer duly authorized for that purpose, shall be subject to all the provisions of law respecting similar suits and proceedings, when instituted by or in the name of any citizen, except where provision is or shall be otherwise expressly made by statute; and in all such suits and proceedings the people of this State shall be liable to be nonsuited and to have judgments of *non pros.* or discontinuance entered against them in the same cases, with like manner, and with the same effect, as

in suits brought by citizens, except that no execution shall issue therein.'

"The first branch of this section, which in general terms subjects suits brought by the State to all provisions of law respecting similar suits brought by a citizen, would, we think, even if standing alone, be insufficient to confer authority to render an affirmative judgment against the State upon a counter-claim or set off. . . . It cannot be supposed that if it had been intended to confer upon the courts the power of rendering affirmative judgments against the State, founded upon set-offs or counter-claims, the legislature would have failed to enumerate that novel and extraordinary power, while taking pains to mention those of so much minor importance."

People v. Corner, 59 Hun. 299, 12 N. Y. Supp. 936 (1891), was an action on contract. A counterclaim based on contract which otherwise would have been permitted was disallowed by the Supreme Court of the State of New York on the express ground that affirmative relief could not be had against the State without its consent.

Both the above cases were cited with approval in the later case of People v. Greylock Construction Co., Inc., 213 App. Div. 21, 209 N. Y. Supp. 735 (1925), wherein the Supreme Court of the State of New York, Appellate Division, after pointing out certain revisions in the law effected by codifications, said (page 24) :

"It is contended that by substituting for said Code of Civil Procedure sections the Civil Practice Act sections, thus altered, the Legislature gave consent to the enforcement of counterclaims against the State. Neither *People v. Corner (supra)*, nor *People v. Dennison (supra)*, in thus limiting the right to counterclaim, has ever been overruled or disapproved. . . .

"If the well-established doctrine is to be abandoned in this State, the authority therefor should come from

the Legislature by direct enactment or by an interpretation of the present statute to that effect by our court of last resort. We are of the opinion that had the Legislature intended to give the right to affirmative relief to a defendant sued by the State, it would have done so in certain terms and not thus indirectly and inferentially. The provisions of said sections 1206 and 1207 of the Civil Practice Act seem to be procedural only and not to grant the substantive right claimed. And we do not find that the State has otherwise granted that substantive right."

The foregoing quotations being typical of others on this subject, we need not further prolong this opinion with excerpts from the decisions of other jurisdictions to the same effect.

Nor need we review the cases based on admiralty law (upon which some decisions not involving such law rely), since, as indicated by the Supreme Court of the United States, supra, they are distinguishable from actions such as the one before us.

We have not overlooked those cases which, as authority for the proposition that an affirmative money judgment against a sovereign on a counterclaim is permissible, cite decisions which granted affirmative relief but did not involve money judgments. We cannot see how they would help defendant.

From all the foregoing it is evident that a counterclaim asking an affirmative money judgment against the Commonwealth cannot be allowed and that therefore defendant's counterclaim must fall.

As we have indicated, the question of the allowance of a counterclaim against the Commonwealth by way of setoff is not before us, and we therefore are not here deciding it.

And now, January 29, 1946, the rule is hereby made absolute and defendant's counterclaim dismissed.